Case number 20-5521 United States of America v. Timmy Fields Oral argument not to exceed 15 minutes per side. Mr. Michael J. Stengel for the appellant. Good afternoon. This is Mike Stengel. I'm a member of the Memphis, Tennessee Bar and it's my privilege to be representing Timmy Fields here this morning. I recognize that the first issue in the brief is a constitutional challenge to the enhanced penalty scheme, but I'm going to start with the precursor conviction, 06-65, because I believe that regardless of how this court rules on the constitutional challenge, that offense is not a predicate offense and Mr. Fields is entitled to a remand for resentencing. And then everything else goes away, right? It may well go away, yes, Your Honor. That conviction is for the Kentucky offense of possessing a precursor with the intent to manufacture methamphetamine. And the district court ruled that it was a serious drug offense because it applied to the test for involving that this court had announced in 2019 in the ESIM case. And that test was a very expansive test that involving meant related to or connected with. That was error because prior to Mr. Fields being sentenced, the Supreme Court had announced its opinion in Shuler and it frankly restricted the definition of involving. The Supreme Court in Shuler stated that involving was not that expansive related to or connected with, but meant necessarily entails. Counselor, can I stop you right there? Because that's the most difficult part I have with your argument. I just don't read. You would agree that if it weren't for Shuler, you would lose on this issue. Is that correct? I hadn't thought of it that way because Shuler's always existed. But yes, Shuler is the basis of the argument. It's hard for me to see how it says what you say it that it means this. And then it goes on to decide an issue which really isn't related to that. Or at least it wouldn't be the issue that they actually they decide in favor of the government in that case, don't they? They did. And your Honor is right. They were deciding whether it was a quote that it is natural to say that an offense involves or requires certain conduct. Can I follow up? Because this is really the core of the issue. Because I agree with you. If the test is necessary, they require. This doesn't necessarily require manufacturing. But I look at this from the background of I've found eight or nine circuits before Shuler that had agreed with Eason. There was unanimous precedent across the circuit courts that suggested that involves means closely related or connected to. And that's what Eason essentially held. And then this issue gets to the Supreme Court. And it really wasn't even briefed. I went and I looked at the government's that case was not about this issue. And so you're asking us to overrule our own precedent and essentially create a circuit split, although I'll admit that no post-Shuler cases have addressed this issue, but disagree with all the other precedent based on reading this language in Shuler, which very well could be dicta because it wasn't necessary to the holding. The Supreme Court has told us in recent years that we shouldn't read opinions like statutes. I wonder why that basic concept shouldn't apply here. And if they want to if they want to take the case and overrule the issue that this this issue overrule all the circuits on this issue, so be it. But do you think why should we find Shuler decided this question, given that background? Well, obviously, your honor has completely understood the background. I would simply suggest to the court that I read Shuler differently. And when it talks about necessarily entailing and involving requiring certain conduct, I believe that it is limiting the expansive, admittedly expansive definition that Eason adopted from other circuits. But you would you would agree it wasn't even addressed, right? I mean, if you look at the briefs, they didn't they didn't talk about this distinction. And it's a subtle distinction, but it's really critical in this case, on the meaning of involved, it wasn't necessarily to pick the conduct versus elements approach. It wasn't necessary to the holding, and nobody addressed it. That's, that's what I'm sure it's essentially accidentally overruled. Everything is what you want us to hold. And I don't know that we want to we should hold that they accidentally overruled the unanimous circuit courts. I disagree that it was accidentally overruling. It was not part of the briefs, I would suggest that the Supreme Court, the parties indeed had agreed as to involving meaning necessarily entailed and requiring certain conduct. And it clearly, as the bench is well aware, is critical on this issue for Mr. Fields. Counsel, isn't it isn't it the case that because the parties agree to it, it really wasn't really what really made no difference to the analysis? Because that case was decided on the elements versus the conduct, it didn't. However, it is important to interpret what a serious drug offense is. And certainly it is. But I'm just thinking, you know, I might agree with you that that's the best reading. Certainly, an argument could be made that it's the best reading for purposes of the issue that's before us today. But we have this Eason test, which you more or less agree goes the other way. So where we would have to be overruling our precedent, based on something that the Supreme Court suggests rather than something, and they don't even really suggest that they just say the because it didn't make a difference. It couldn't have made a difference because both sides agreed to it in that case. That's the difficulty. Maybe it's the same difficulty that Judge Murphy has, although I'm not sure I would phrase it in terms of what was argued in the briefs, because I think the Supreme Court can decide legal issues that weren't necessarily addressed in the brief. I just wonder whether they did that in this case. Judge, I guess the only real response I can have is that I believe that they did. And I think the district court recognized, indeed, that the Supreme Court Shuler decision may have limited the Eason test. However, it felt bound by published Sixth Circuit precedent. I would simply suggest that, number one, very quickly, Shuler is the appropriate test, that it did limit Eason. And number two, that this does not make the Shuler test because all that the conviction did was a conviction for possession with intent to do something. How have the other circuits treated Shuler? I'm sorry, Judge White. I didn't hear you. How have the other circuits treated Shuler? I am unaware of any post-Shuler case addressing this particular issue. I believe that this court will be writing on a blank slate with respect to that. And I would simply suggest that this conviction doesn't necessarily entail manufacturing, because all it did was convict Mr. Fields of possession of a precursor with intent that manufacturing of methamphetamine occur, and the simple fact that he had the intent. People intend things all the time, and they don't necessarily inevitably result. People intend to arrive on time. It doesn't mean they will. People intend, adult children intend to call their elderly parents more frequently. It doesn't mean that you can't hear the fact that Mr. Fields possessed a precursor. You have, part of the element is that he possessed it with intent to manufacture, so you have that finding. Okay, and then the word involving is, I mean, it's a common word, and to say that you possess something with intent to manufacture a particular thing, and then you ask, well, does that involve manufacturing a specific thing? You know, it's short. You can say it doesn't because you never manufactured it, but you could also, as Eason says, say that, well, it involves it because that's why you had it, and that's what you intended to do. So, I mean, Eason was pretty settled before the case came along, you know. I can't disagree with the interpretation of Eason. That is why I contend that Mr. Fields was prejudiced because Eason should not have been followed in light of Shuler. I'd like to briefly move, in the time I have remaining, to the challenge to the enhanced penalty scheme and its constitutionality. Briefly, when the First Step Act was passed, it changed the finding necessary for an enhanced penalty from a felony drug offense, which, of course, is a legal conclusion, to a serious drug or violent felony. That is both legal and factual. It's the interplay of 841, 851, 802, 57's definition of serious drug felony, Apprendi, and Allene, that make the scheme, not any individual statute, but the scheme unconstitutional. 851c requires, when there's a challenge, that the court- Counsel? This is a constitutional challenge, and if the unconstitutionality is having a judge decide these things, but in Mr. Fields' case, a jury decided it, why does he have standing to challenge really anything other than the failure to follow the statute, which is not constitutional? Well, he was prejudiced because an enhanced penalty was applied without following 851c, which is mandatory before any enhanced penalty under 841 can be applied. So it's a failure to follow the statute, right? We're not talking about a constitutional violation here, it's a failure to follow the statute. Correct. Thank you. Counsel, could I ask a question, even though your time is up? Certainly. Is that all right, Judge Wyeth? It sure is. I think even the district court recognized the, or assumed at least, the unconstitutionality of the provision that said that such a decision would be made by a judge without a jury, and so the judge had the decision made by the jury, and now your argument is that's inconsistent with the statute. Shouldn't the statute, instead of throwing the whole statute out by virtue of this problem, wouldn't it make more sense just to throw out the part that says without a jury? And I guess the argument is, well, it's not up to us to rewrite statutes, but you know, I was reading a case that came down from the Supreme Court on Monday, which basically did that, just changed the statute, tweaked the statute to make it constitutional, assuming that that's clearly what Congress would have preferred, given the two choices of just not required change. Why shouldn't we uphold the district court's effort to do exactly that? Judge, I would suggest you should not, because as the court, as your honor stated, it is Congress or the legislative branch that writes, or in this case, rewrites statutes. I don't think that it's clear what Congress would have intended. For instance, if the court agrees with me, there are different alternative fixes. One could rewrite 851C's requirement that everything be decided by a judge, or one could rewrite 851A's what was necessary to apply an enhanced penalty. Let me ask this. I know your time is up. If there are various minor, there are differences in the quick fix that could be made, short of throwing the whole statutory provision out, why isn't it just as deferential to Congress to figure out what the most likely one is, and then Congress can change that, rather than taking the choice that Congress almost definitely would not have made, which is to throw the whole scheme out? Judge, I go back to the Supreme Court saying that the court means the judge without a jury, not the judge acting with a jury, and I don't think, because there are alternative fixes, depending on which statute, I think that that is to the legislative branch to tell the courts and parties what they prefer. Thank you. Thank you, counsel. You'll have your full rebuttal. Thank you, your honors. Andrew Noll on behalf of the United States. I'd like to start directly with the precursor statute and the categorical approach, as that took up much of the time this afternoon. As Judge Murphy points out, in Shuler, the definition of involving wasn't at issue directly in that case. The court was determining what type of categorical approach whether it's a generic offense or elements matching or, as it determined, a conduct matching approach was at issue. So we don't know that the case necessarily turned or the court really reasoned about what word involving meant. Does the government have an official position now? Because the government's position was the broader definition applied before Shuler, but then it adopted, or at least seemingly adopted in its brief, perhaps a narrower definition. I'm curious, like if this case got back up to the Supreme Court, and we said Shuler was dicta, would the government just say, no, that was our position all along, and we were wrong? So I'm curious if there's a national position from the government on this issue. So your honor, and you've clearly read our brief in the Supreme Court, I would say our position is that the involving means that something must be a necessary consequence of the conduct, and that's the position we took in the brief. I think the court was a little more restrictive in describing our position as necessarily entail, and I think it's important to remember that in Shuler, the court made clear that by using involving, Congress meant to capture conduct that's not a clear element, a necessary element of an offense, and that isn't kind of a generic statutory matching. So I think here, the fact that, I think ESON is still good law, at least it's reasoning under our view of what involving means, which is- Well, I don't understand how that's consistent with the government's position on what the definition is, because you clearly can commit this offense without actually manufacturing anything. It's almost like an attempt statute, effectively. You just need to have possessed an manufacturer. I don't think most people would say that that offense, the statutory elements of this offense, necessarily entails manufacturing, because you can get caught before you actually engage in manufacturing. So in my view, the two definitions of involve that I have looked at, closely relate to, and necessarily entail or include, are two very different definitions that lead to divergent results here. But you seem to suggest that they both lead to the same result. I just don't agree with that, I suppose. So what should I do if I don't agree? So I think if you don't agree that, I mean, if you don't think it fits the definition of involving, then that ends the question. But I would give you three quick responses, Your Honor, why I don't think your reading is correct. So first, again, Shuler made very clear that conduct does not have to be a direct element of an offense. And Congress knows how to use an elements matching statute. You can look directly to the preceding provision of 924E, where the violent felony is defined, that takes an elements matching approach. And that's not what Congress did with involving. Second, with respect to this specific statute, it is a possession statute, but it's not an attempt statute. It's a completed offense under Kentucky law of possessing with a specific intent to manufacture methamphetamine. And we think the specific intent to use the precursor to manufacture is what gives the nexus for something that manufacturing is the necessary consequence of the conduct. And third, I think if those two don't convince you, I would just look at the federal statute that we cite on page 36 of our brief, 21 USC 843A6. So if you look at the federal statute, it refers to all of the federal offenses under the Controlled Substances Act. Then there's subsection B, which refers broadly to state offenses that involve manufacturing distribution or possessing with intent to manufacture and distribute. And I read Congress to be trying to sweep in the set of conduct under state law that matches the federal set of offenses. And I think that's why they use a broad definition like involving, because it's hard to sort of get at that with an elements-based offense. And section 843A6 is a federal offense that criminalizes the possession of materials or even equipment with the specific intent to manufacture methamphetamine. And when methamphetamine is at issue, it applies a 10-year mandatory minimum. So this same conduct under federal law would clearly, if it was charged under federal law, would clearly fit the statutory definition of serious drug offense. So I think it would be odd to conclude that by using the word involving, Congress meant to box out this type of offense merely because it was charged under state law. Let me ask you a question about just the precursor statute. Do you think you could, for this Kentucky precursor statute, which is possession of ingredient with intent to manufacture, do you think you could actually charge manufacturing under the federal statute for this conduct? So I think it would depend, Your Honor, frankly on, I think unless there was actually, I think you could charge attempt to manufacture if there was some specific step taken. But this isn't an attempt statute, Your Honor. It's a substantive offense that both Kentucky and federal law have made. The point I'm getting at is I don't think, maybe you and I understand the word entail differently, but when I hear the word entail, that means like the consequence is manufacturing. And when you can't even, when you can't even charge it, I don't see how the consequences. So I think, I think the necessary consequence of the conduct, I think there's a line of causation. I don't know that you have to get close enough to be able to charge a substantive offense for the conduct to necessarily involve. I mean, it's clear the aim under state law to convict Fields as he was convicted has to be that he had the specific intent to use this to manufacture methamphetamine. And again, I go back to the fact that this same offense, even on its own terms is something that if charged federally would fall within the definition of serious drug offense. So I think again, the specific intent here is what's, is I think most important to us and distinctive. You could even find, I don't, I think Easton is still, it's reasoning is correct, but Easton of course, involved the recklessness statute. And so I think there is some question about whether that statute under Tennessee law is broader than involving, but I think here where recklessness is not part of the statute and it requires a specific intent to use the precursor to manufacture methamphetamine, but that clearly involves the manufacture of methamphetamine, even under the position that the government took in the United States, in the Supreme court in Shula. Is this, is this case, pardon me, it's this case about, it's about the meaning of manufacturing in common parlance. Could you be manufacturing something without ever getting it completely manufactured? So I think you can involving manufacture, your honor. I think again, involving is part of that definition. Why couldn't you be, let's say you're engaged in manufacturing and you've put all the pieces together, but you haven't lit the fire under the, under the teaspoon yet. And so it, it isn't meth yet, but there you are tinkering and pouring and all of that. And then just before you light the match, they arrest you. You haven't committed the crime. That seems count. That seems unlike the normal use of the word. And that, and Supreme court in shoulder says, it's just thinking about normal use of the word. Am I wrong about that? I don't know that you're wrong, your honor. And I also point this court to the federal definition of manufacturing, which is an 802. I'm reluctant to get into the federal definitions because there's cases that say that these are two different statutory provisions and we got each one separately. Well, in Schuller and interpreting what involving manufacturing, distributing and possessing means those, those terms are defined under federal law. So manufacturing involves and includes the preparation and processing of a drug and substance. So I think even the federal definition of manufacturing is quite broad. And again, when you add on the involving again, Congress did not say that these statutes have to have an element of manufacturing or that the fence is manufacturing. Those are alternative articulations that Congress has used in the categorical approach arena. And again, I'd point you back to the violent felony provisions of nine 24 E where Congress did make those choices, but Schuller makes clear that Congress did something broader by using the term involving. And so we think both under East and under the definition of evolving that the government adopted in the Supreme court this statute under Kentucky law qualified. But if you're, if you're focusing on the word manufacturer or manufacturing I tend to agree with judge Rogers that, you know, putting, putting all this stuff together, if you think, and, and that's where you're headed, that's your intent, that feels like it involves manufacturing, but that's not what's required in this statute. What's required in the statute is that you possess the precursor, which could be exactly what the district court court asked. I mean, you go into the store, you buy it and then, you know, that's what you bought it for, but you kind of never got around to it or you were stopped or whatever it is. It's hard to see how that offense involves manufacturing. So your honor, I guess I would just go back to, again, the specific intent requirement under Kentucky law. And then the fact that the same conduct is clearly encompassed under federal law. Well, there's no, so you're saying that if something has as a requirement, as an element, the specific intent to manufacture them, that it doesn't matter what it is, it's covered. I think if that is the specific intent shows the necessary consequence of those actions is to manufacture then yes, because Congress chose to use involving here. It doesn't require that, there'd be the element of manufacturing. If it's taking a bath with the specific intent to manufacture them, does that involve manufacturing meth? So I think there'd probably be some other challenges to that type of statute, your honor. I think it's important that here, the specific chemicals also that, that are possessed as fields can see is our list one chemicals. The statute refers to certain types of amphetamines in there that are regulated by the federal government, although not controlled substances themselves that are because they're of their importance to the manufacturer of controlled substances. So again, I think it's both, it's important to look at what's required to be possessed and also the specific intent. So again, we think that this, the statute qualifies and this court, although not addressing this specific type of challenge, we acknowledge has previously held that this statute qualifies as a serious drug offense. And I'd also just get, can I just get one clarification? So you would, you would agree that you can, you can get convicted under the statute, even if you interpret manufacturing Bravo property, that you could get convicted under the state statute without actually manufacturing meth. Cause all you need is possession. So that, so then with the intent to make it, I mean, yeah, yeah, yeah. But the end result doesn't have to happen under the statute. And I think your position is because the end result is what you intended. That's enough, but doesn't under the categorical approach, aren't we supposed to kind of ask would, when the end result of manufacturing under the statute always occur. And if not that we'd look to the least amount of conduct. And since it doesn't necessarily have to occur, that means it's overbroad. That's I get your point about intent that you always, it like that's your, it oftentimes that's what you're trying to accomplish in abstract, but you don't actually have to accomplish it in order to get convicted. So your honor, I think that's right. You don't have to accomplish it. And I would direct you to what the Supreme court says by using involved congressmen to include statutes that don't include the conduct as a specific element of the offense. And I take from your question. You're asking whether manufactured the actual end result is an element of the offense. And it doesn't have to be understood. I guess I would distinguish, have an element. The difference between having an element is like you're legally charged. This has to happen versus even if it's not an element, the actual factual conduct always happens. And I would have still thought that that's what they were trying to get at. It doesn't have to be one of the elements of the crime, but if you just look at the crime, the end result will always include manufacturing. I don't think so, your honor. And I would say, I would point this court to a pre Schuller case undoubtedly, but the first circuit's a decision to McKinney, which we cite in our brief with, which encompasses conspiracy offenses. I think again, Congress, if they want it to be an element, they can do that. And then it's very restrictive, but I think that's not what Congress is here. But I, but I completely agree with you that McKinney is right on point and very helpful for you, but it, it didn't adopt a definition that was at least suggested in dicta and Schuller. It was it relied on the means, but, but you're trying to argue that even if involved means necessarily entail or require that it's still covered. And that's why I'm having trouble with, I hear you, your honor. And I would just say our position is that the outcome of McKinney is still consistent with the Supreme court's definition Schuller, even if the first circuit adopted a more expansive understanding of that term. So I'm happy with it. I don't have much time remaining. So if there's any questions, I'd be happy to answer them, but otherwise the government's to rest on its brief with respect to the other issues. And we'd simply ask that this court affirm the judgment of the district court. Thank you. Well, counsel, what's your view of the remedy? So your honor, my view of the remedy is I think both you and judge Rogers put the, hit the nail on the head, which is that this is a stat alleged statutory conflict here. And so this court has a couple of options. If it sees such a conflict, which we of course think that there isn't a conflict at all. And if there is a first, you could evoke the constitutional avoidance canon, you know, the Supreme, the constitutional six amendment requirement governs. So if the statute would be fine, the statute would be unconstitutional. You should give way to the statute. I think that's also consistent with, you know, opposing counsel invokes Booker. Booker's remedial scheme was all about determining what congressional intent was. And I think there's three very specific reasons why Congress would have wanted the first step backs sentencing scheme to still apply. First, it was passed much more recently than section eight 51, which was passed 50 years ago. And so there's a canon of constitutional construction that when there is a direct conflict, the more recent statute could, should control under the implied repeal theory. Second, the fact that Congress chose not to jettison all mandatory minimum sentences when it significantly narrowed them under the first step to make them apply only when there's specific sentencing, you know, terms of incarceration and recency with respect to a defendant's fair conviction. And so I think it's clear that statute that Congress wouldn't have wanted to jettison the minimums altogether, which is what opposing counsel's remedy would do. What do you make of the Booker suggestion that you're not just sitting all together, you're just turning shall be sentenced to maybe sentence and leave the district courts with discretion. What's wrong with that? So again, your honor, I think for these three reasons, Booker was about congressional intent. I don't think we can think that's what Congress's intent was. It wanted to retain some minimums. It could have gotten rid of them entirely as it narrowed them under the first step back. It did not. But even more specifically, your honor, I would say that eight 41 B one, which is the statute, the penalty statute that field was convicted of already has a mandatory minimum of 10 years and maximum of life. So fields is remedy would render the serious drug felony entirely superfluous because it would do nothing to the sentencing range in and of itself. So it would just have no impact. And I think that clearly can't be what Congress intended when it passed only a few years ago, a more nuanced scheme that clearly tried to the defendant's benefit, narrow the set of circumstances under which prior convictions might be to significant mandatory minimum. Thank you, counsel. Thank you, your honors. Bottle. Thank you, your honors. I'll start with the government's argument that the mere fact that means it necessarily entails manufacturing. I would suggest that that is simply wrong, that possession with intent does not necessarily entail manufacturing because intending something does not mean that it will necessarily occur that it's an inevitable result. But isn't that isn't that sort of a stretch to say that necessarily entails in demands that the manufacturing actually occur? I mean, what about Judge Rogers hypotheticals, or you've got somebody who's right in the middle of the act, they're about to light the match. I mean, the notion that, well, first of all, it seems like they probably have been manufacturing it, it just wasn't completed. So I mean, where do you draw the line? Because I think drawing it at the line that if you don't end up with meth at the end, it does not involve the manufacture of meth. It just doesn't make sense. Well, to briefly answer the first question, I would draw the line, I personally on behalf of Mr. Fields would draw the line at you must have meth. However, I recognize that that is a stretch. And I think that the line really should be drawn at something that the that it must almost be with the intent to manufacture meth. But that the in order to be a serious drug offense, that the manufacturing was virtually inevitable. I think of parking a standard car on a hill, if you park it on a hill, and you don't leave it in gear, and you don't engage the emergency or here, the conduct that violated the state statute required intent, but it was certainly not inevitable, or anywhere close to Judge Rogers example of the match not lighting the first time you strike it under the teaspoon. All it required was possession. It required nothing more. Possession with the intent to that is, that is what was necessary to violate the Kentucky statute. Yes, I'm suggesting that the Kentucky statute does not necessarily entail manufacturing. I understand. I understand what you're saying. I see my time is up. So unless there's any post of it. So if you want to add something, it's fine. Other than what I have said that we've been over, I submitted on Mr. Fields brief, and thank the court for its attention, and especially thank the court for the continuance that allowed me to not cut short a vacation. Any other questions? No, we're good. Thank you both. It will be submitted.